IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADDEMYS N.R.,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br><br>Respondents. | Civil No. 1:26-cv-03892-MWJS<br><br>ORDER GRANTING MOTION TO ENFORCE IN PART<br><br>A# 220-511-164 |

**ORDER GRANTING MOTION TO ENFORCE IN PART**

Petitioner Addemys N.R.[1] moves this court to enforce its prior judgment. Dkt. No. 21.

The relevant factual and legal background is described in the court's order granting the petition for writ of habeas corpus in part, *Addemys N.R. v. Warden of the California City Detention Facility*, No. 1:26-cv-03892-MWJS, 2026 WL 1831763 (E.D. Cal. June 25, 2026). In that decision, the court explained that Respondents' re-detention of Petitioner without a bond hearing had violated his due process rights under the United States Constitution. In order to remedy that violation, the court ordered Respondents to

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

release Petitioner "unless they demonstrate[d], within seven days of the date of this Order, by clear and convincing evidence at a bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified." *Id.* at *3.

A bond hearing was timely held for Petitioner on July 8, 2026. Four days later, the Immigration Judge (IJ) issued a thorough and detailed order denying bond, based on a finding that Respondents had shown by clear and convincing evidence that Petitioner "presents both a danger to the community based on the serious pending criminal charges against him, and a risk of flight given his removal order and few ties to the United States." Dkt. No. 23-1.

Petitioner's Motion to Enforce not "does not ask [the] Court to reweigh the criminal charge, reassess credibility, decide dangerousness, set bond, or substitute its factual judgment for the IJ's." Dkt. No. 24, at pg. 8. In other words, the Motion to Enforce does not directly challenge the IJ's decision. It argues instead that the decision itself does not tell—and could not have told—the full story. That is because, in Petitioner's view, a defect "occurred *before* the IJ's weighing of danger and flight risk." *Id.* (emphasis added). And that defect arose from the fact that "the hearing proceeded without meaningful notice to [Petitioner's] retained counsel, without counsel's participation, and without the evidence counsel attempted to submit." *Id.* As a result,

Petitioner contends he was deprived of the constitutionally adequate bond hearing that this court ordered.

Rewind a few weeks to June 25, 2026, the date of the court's decision ordering Respondents to provide Petitioner with a constitutionally adequate bond hearing. One day after the order was entered, Petitioner's family contacted the law office of Marco A. Garzon for assistance with the newly ordered bond hearing. Dkt. No. 21-1, at pg. 7. Garzon was formally retained to represent Petitioner on June 29, and shortly thereafter "spoke directly with [Petitioner], . . . advised him that [he] was going to represent him in the bond request, and to please let the officials and court know that [he] was going to be his attorney." *Id.*

On July 1, Garzon "submitted a request for bond redetermination with the immigration court, using the [EOIR Courts & Appeals ("ECAS")] system," and also filed an EOIR-28 Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court. *Id.*; *id.* at pg. 3 (email from EOIR acknowledging receipt). But due to the procedural posture of Petitioner's immigration case, the "only option" on ECAS corresponding to a bond request was designated a "Pre-NTA Bond Request," so Garzon filed the request accordingly. *Id.* A week later, on the morning of July 8, he "received notice that [his] request for bond had been rejected, because it needed to be filed" as a "bond redetermination request." *Id.*; *id.* at pg. 5 (rejection email from EOIR). But after reviewing ECAS afresh, Garzon again found no "bond redetermination

request" available; the "only option to submit the bond request" through ECAS was as a "Pre-NTA Bond Request." *Id.*

Also on the morning of July 8, Garzon received a "communication from [Petitioner's] family" informing him that Petitioner "was scheduled for a hearing the same day in the afternoon." *Id.* And after reviewing ECAS, Garzon was able to confirm that "a bond proceeding had been initiated in the ECAS system" two days earlier on July 6, 2026. *Id.* This was a surprise to Garzon, as the bond proceeding event had been entered on ECAS "without notice to [Petitioner] nor myself." *Id.* He "immediately submitted" an EOIR-28 to ECAS at approximately 10:10 a.m., so that the immigration court would be "on notice that [he] was representing [Petitioner] in any bond proceedings." *Id.*; *id.* at pgs. 10-11 (timestamped EOIR-28). In addition, Garzon "tried to contact the court by phone to get information, but could not talk to any clerk from the court." *Id.*

The bond hearing proceeded as scheduled on the afternoon of July 8, without Garzon's attendance, and with "very short notice to [Petitioner]." *Id.* It is Garzon's understanding that Petitioner "mentioned in the hearing that [Garzon] was going to represent him and that [Garzon] had documents to present in support of his bond case," but the IJ went ahead with the hearing without Garzon's presence and with "no

opportunity for [Petitioner] to submit documents in support of his bond case." *Id.* And as noted above, the IJ ultimately denied bond.[2]

Petitioner now asks the court to enforce its judgment ordering Respondents to provide him with a constitutionally adequate bond hearing. He argues that when the IJ proceeded with the bond hearing without his counsel present—in spite of counsel's reasonable efforts to appear in the case (including his unsuccessful filing of an EOIR-28 notice of appearance a week prior to the hearing, his later filing of a second EOIR-28 once a bond hearing event had been entered in ECAS, and his attempts to file the bond request and supporting materials)—he "deprived [Petitioner] of the very process this Court ordered." Dkt. No. 21, at pgs. 6-7. He seeks immediate release, or in the alternative an order requiring Respondents to provide him with a new constitutionally adequate bond hearing.

There is no Sixth Amendment right to counsel in immigration proceedings. *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007). But noncitizens are nonetheless entitled to be represented by counsel in removal proceedings based on the due process guarantees of the Fifth Amendment—a right which Congress has codified in multiple provisions of the Immigration and Nationality Act. *Id.*; *see* 8 U.S.C.

---

[2] The facts in this section are taken from Garzon's sworn declaration. *See* Dkt. No. 21-1, at pgs. 7-8. Respondents have not meaningfully disputed any of the facts in Garzon's declaration or submitted any contradictory evidence, so the court accepts the allegations in the declaration as true for the purposes of this order.

§§ 1229a(b)(4)(A) and 1362 (right to be represented by counsel at noncitizen's own expense), § 1229(a)(b)(4)(B) (right to present evidence); *see also Iturribarria v. I.N.S.*, 321 F.3d 889, 899 (9th Cir. 2003). It follows that a noncitizen "cannot appear pro se without a knowing and voluntary waiver of the right to counsel." *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005). And in order to obtain such a waiver, "an IJ must (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response." *Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1080 (9th Cir. 2007) (cleaned up). "If the petitioner does not affirmatively waive his right to counsel, the IJ must inquire whether there is good cause to grant petitioner more time to obtain counsel." *Biwot*, 403 F.3d at 1100. And if the IJ proceeds without obtaining the necessary waiver, or without reasonably considering whether to continue the hearing, that constitutes the denial of the right to counsel. *See Hernandez-Gil*, 476 F.3d at 806.

In applying these standards, the Ninth Circuit has explained that "[w]hen an immigrant has engaged counsel and the IJ is aware of the representation, if counsel fails to appear, the IJ must take reasonable steps to ensure that the immigrant's statutory right to counsel is honored." *Id.* at 808. It is undisputed on the current record that Petitioner retained Garzon and apprised the IJ of that fact during the hearing. Petitioner therefore could not have explicitly waived his right to counsel. *See Mendoza-Mazariegos*, 509 F.3d at 1080. In addition, it appears undisputed that Garzon filed at

least one valid notice of appearance before the bond hearing, making the IJ "at least constructively aware of the representation before the bond hearing." *Quintana Chagolla v. Mattos*, No. 25-cv-02435, 2026 WL 524228, at *2 (D. Nev. Feb. 25, 2026). Nothing in the record before the court indicates that the IJ sought a knowing and valid waiver or inquired into whether a continuance was warranted. So on the current record, the court cannot say that reasonable steps were taken to ensure that Petitioner received the benefit of his right to counsel.[3] That deprived Petitioner of his right to counsel. *See Hernandez-Gil*, 476 F.3d at 808; *see also Myrtil v. Garland*, 857 F. App'x 922, 923-24 (9th Cir. 2021) (holding that a noncitizen's right to counsel was denied when "instead of ensuring Myrtil's right to counsel, the IJ just proceeded with the hearing").

That does not necessarily end the inquiry. Although the Ninth Circuit has explained that in certain circumstances, a noncitizen who "shows that he has been denied the statutory right to be represented by counsel in an immigration proceeding need not also show that he was prejudiced by the absence of the attorney," *Montes-Lopez*

---

[3] The court notes the record is silent as to what occurred after Petitioner informed the IJ that he wished to be represented by counsel and had evidence to present. It is possible that, on a more complete record, the court might have reached a different conclusion about whether the IJ took reasonable steps to honor Petitioner's right to counsel. And although the government was instructed to "FILE any and all transcripts or other documents necessary for the resolution of the issues presented in the Motion," Dkt. No. 22, it has not submitted any evidence aside from the IJ's written order. The IJ's order does not touch any issues relating to Petitioner's counsel, so there is no evidence before the court from which it could conclude that reasonable steps were taken to ensure Petitioner's right to counsel.

*v. Holder*, 694 F.3d 1085, 1093-94 (9th Cir. 2012), it has "cabined" that exception to "settings other than the merits hearing." *Ruiz v. Bondi*, 172 F.4th 673, 679 (9th Cir. 2026); *but see*, *e.g.*, *Quintana Chagolla*, 2026 WL 524228, at *2 (concluding that no showing of prejudice was required after finding that a noncitizen had been denied the right to representation at a bond hearing).

Assuming the *Montes-Lopez* exception does not apply here, Petitioner has nonetheless made the necessary showing of prejudice. As Petitioner discusses in his briefing, the bond denial was "based heavily on the lack of respondent-submitted evidence," including a lack of "evidence of innocence or evidence alleviating the Court's concerns regarding the criminal allegation," "supporting letters, affidavits, or other documents," or "documentation of family ties, employment, property or other connections to the United States." Dkt. No. 24, at pg. 5. Moreover, to the extent that the dangerousness and flight risk inquiry turned in part on Petitioner's criminal charges and the procedural posture of his immigration proceedings, respectively, it involved "technical questions for which an attorney fluent in English and familiar with the law . . . would be much better positioned" to address than Petitioner himself. *Filimonova v. Holder*, 327 F. App'x 34, 36-37 (9th Cir. 2009). Had Petitioner's counsel "been present at his [bond] hearing," Petitioner could have "better presented evidence" and "would not have had to answer the IJ's questions 'without any idea of their legal significance.'" *Hernandez-Gil*, 476 F.3d at 809 (quoting *Biwot*, 403 F.3d at 1100). In other

words, "it is highly likely that he would have more advantageously presented his case," even if it is not clear beyond peradventure that a different result would have been reached. *Id.* (cleaned up). But that is nonetheless sufficient to demonstrate prejudice under Ninth Circuit law. *See id.*; *see also Filimonova*, 327 F. App'x at 37.

On the record before it, then, the court cannot avoid the conclusion that Petitioner's right to counsel was violated. Courts in this district and others have granted relief under similar circumstances. *See Quintana Chagolla*, 2026 WL 524228; *Mancia v. Bondi*, No. CV-26-01392, 2026 WL 1085090 (D. Ariz. Apr. 22, 2026); *Ortiz-Chavez v. Chestnut*, No. 1:26-cv-01182, 2026 WL 1759592 (E.D. Cal. June 18, 2026); *cf. Aguilar v. Corecivic, Inc.*, No. 1:25-CV-01952, 2026 WL 1533490, at *2 (E.D. Cal. June 1, 2026) (denying relief based on a finding that after Petitioner's counsel failed to appear, the IJ "complied with her duty . . . [to] take reasonable steps to ensure that the immigrant's statutory right to counsel is honored" when she "reached out to [counsel's] office, made contact with counsel, and continued the hearing to the next day").

Respondents oppose this conclusion on two grounds. They first contend that Petitioner's motion "seeks to relitigate the adequacy of the bond proceeding" in an "impermissible collateral attack on the [IJ's] conduct . . . and custody determination." Dkt. No. 23, at pg. 2. And they argue that the proper procedure for such a challenge to a bond determination is an appeal to the BIA, so the motion should be denied for failure to exhaust. *Id.* The court is unpersuaded by this argument. As this court has

previously explained, there is no exhaustion requirement when the only relief Petitioner seeks is the enforcement of the court's own prior order. *See Henry A.V.L. v. Warden of the Cent. Valley Annex Detention Facility*, No. 1:26-cv-03354-MWJS, 2026 WL 1999944, at *4 (E.D. Cal. July 10, 2026). For the reasons articulated in *Henry A.V.L.*, the court again concludes that exhaustion is not required before the court can consider Petitioner's motion to enforce.

The thrust of Respondents' second argument is that the court "ordered the Petitioner [to] receive a bond hearing, and Petitioner indisputably received one." Dkt. No. 23, at pg. 5. But as the court emphasized in the course of granting that relief, such a remedy was necessary to alleviate Respondents' "failure to provide constitutionally adequate post-deprivation process." *Addemys N.R.*, 2026 WL 1831763, at *3. It is not enough that "something called a bond hearing" occurred, Dkt. No. 24, at pg. 1; in order for it to effectively provide the relief the court ordered, it needed to be constitutionally adequate. And as discussed above, a hearing in which a noncitizen is denied the right to counsel is not a constitutionally adequate one. *See Iturribarria*, 321 F.3d at 899.

Respondents further suggest that even if the bond hearing was infected by some constitutional deficiency, any such defect was the result of Petitioner's counsel's own nonfeasance. They assert that Petitioner's counsel "never filed a notice of appearance with the Immigration Court, never contacted the Court regarding the scheduled hearing, never contacted the Court regarding the failed upload of any rejected filing,

never requested a continuance, and never filed any pleadings or evidence in connection with the custody proceedings." Dkt. No. 23, at pg. 5. But the record does not support these assertions; in fact, it directly contradicts several of them. And even if these allegations were true, Petitioner's contention that he informed the IJ of his intention to have counsel present remains undisputed. That is enough to have triggered the IJ's duty to "take reasonable steps to ensure that the immigrant's statutory right to counsel is honored." *Hernandez-Gil*, 476 F.3d at 808. So while it may not have been Respondents' obligation "to supervise Petitioner's privately retained attorney," Dkt. No. 23, at pgs. 5-6, it was indeed their obligation to ensure that Petitioner's right to counsel was honored.[4] And Respondents point to nothing in the record that would excuse that violation of Petitioner's right to counsel.

For the foregoing reasons, Petitioner's Motion to Enforce Judgment, Dkt. No. 21, is GRANTED IN PART. The court ENFORCES its June 25, 2026 Order as follows:

Respondents are ENJOINED AND RESTRAINED from continuing to detain Petitioner unless they demonstrate, within seven days of the date of this Order, by clear

---

[4] At various points in their briefing, Respondents appear to suggest that their only obligation pursuant to the court's order was to "request[] that the Immigration Court calendar the hearing," Dkt. No. 23, at pg. 1, and that any defects in the administration of that hearing are therefore not attributable to Respondents and not indicative of noncompliance. That argument is unavailing, if for no other reason than the "Current or Acting United States and United States Attorney General" is named as a Respondent, and it is "the Attorney General, through immigration judges," who is authorized to hold bond hearings. *See Joe v. Garland*, No. C21-998, 2021 WL 5332867, at *3 n.2 (W.D. Wash. Oct. 18, 2021).

and convincing evidence at a bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified. If Petitioner or his counsel need more than seven days to prepare for the hearing, however, any request that they make—if granted—will automatically extend the seven-day requirement referenced above by whatever amount of additional time Petitioner has been granted. As such, this order's seven-day requirement is not an appropriate basis for denying Petitioner's request for additional time, should Petitioner make such a request.

At the bond hearing, Petitioner must be given a meaningful opportunity to proceed with the assistance of counsel, to the extent required by statute and Ninth Circuit law. Any waiver of counsel must be knowing and voluntary. And to ensure that Petitioner is given such a meaningful opportunity to proceed with the assistance of counsel, Respondents must notify Petitioner, his undersigned counsel of record in this case, and any counsel of record active in the proceedings before the Immigration Court of the time, date, and place of his hearing at least 72 hours in advance of the hearing. Petitioner must also be given a meaningful opportunity to present evidence, to the extent required by statute and Ninth Circuit law. Respondents shall file a status report within ten days of the date of this order, confirming whether a bond hearing has been held and, if so, the outcome of that hearing.

IT IS SO ORDERED.

DATED: July 30, 2026, at Honolulu, Hawaiʻi.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge